**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| TK ELEVATOR CORPORATION AND TRIAD SENIOR LIVING, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | **Case No. 23-cv-17173** Hon. Edmond E. Chang, U.S.D.J. |
| v. | ) ) ) | Hon. Maria Valdez, U.S.D.M.J. |
| CHURCH MUTUAL INSURANCE COMPANY, S.I., | ) ) ) | |
| Defendant. | ) ) | |

**TK ELEVATOR CORPORATION'S RESPONSES TO CHURCH MUTUAL
INSURANCE COMPANY, S.I.'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

**COMES NOW** Plaintiff TK Elevator Corporation ("TKE") and for its responses to

Defendant Church Mutual Insurance Company, S.I.'s ("CMIC") Statement of Undisputed Material

Facts [ECF No. 95] states as follows:

A.      **Claims against TKE**

1.      Maggie Carroll filed a lawsuit against TKE, which is pending in the United States

District Court for the Northern District of Illinois. See Defendant's Summary Judgment Exhibit

A, Plaintiff's Second Amended Complaint, this Court's Docket ("Dk"), #80, Exhibit D.

**RESPONSE: TKE admits that Carroll filed a lawsuit against TKE, which is pending in the**

**U.S. District Court for the Northern District of Illinois (the "Carroll Action"), and CMIC**

**attached as its Exhibit A the Second Amended Complaint filed in this action, which attaches**

**as Exhibit D the First Amended Complaint that Carroll filed in the Carroll Action [starting**

**at .pdf page 336].**

1

2.      Her First Amended Complaint alleges that on November 12, 2018, she was on the premises of Waterford Estates as an employee. *Id.* at ¶5 which is incorporated into Count II at page 4.

**RESPONSE:  TKE admits that CMIC has paraphrased Carroll's allegations in paragraph 5 of her First Amended Complaint, and Count II "repeats and re-alleges" paragraphs 1-11. TKE further states that the pleading is a document that speaks for itself, and TKE filed its Answer in the Carroll Action.**

3.      She entered an elevator on the premises. *Id.* at ¶¶6&8 which is incorporated into Count II at page 4.

**RESPONSE:  TKE admits that CMIC has paraphrased certain of Carroll's allegations in paragraphs 6 and 8 of her First Amended Complaint, and Count II "repeats and re-alleges" paragraphs 1-11.  TKE further states that the pleading is a document that speaks for itself, and TKE filed its Answer in the Carroll Action.**

4.      The elevator suddenly dropped and then suddenly stopped, causing her injuries. *Id.* at ¶9 which is incorporated into Count II at page 4.

**RESPONSE:  TKE admits that CMIC has paraphrased certain of Carroll's allegations in paragraph 9 of her First Amended Complaint, and Count II "repeats and re-alleges" paragraphs 1-11.  TKE further states that the pleading is a document that speaks for itself, and TKE filed its Answer in the Carroll Action.**

5.      The First Amended Complaint alleges that the elevator at Waterford Estates is under the care of TKE, and that TKE has a duty to maintain and repair the elevator. *Id.* at ¶7, 10, 11, which is incorporated into Count II at page 4.

**RESPONSE: TKE admits that CMIC has paraphrased certain of Carroll's allegations in paragraphs 7, 10, and 11 of her First Amended Complaint, and Count II "repeats and re-alleges" paragraphs 1-11. TKE further states that the pleading is a document that speaks for itself, and TKE filed its Answer in the Carroll Action.**

6.     Carroll alleges that TKE was negligent in connection with its duties with respect to the elevator and that this was a direct and proximate cause of her injuries. *Id.* at ¶¶13-15 & Count II 14-15.

**RESPONSE: TKE admits that CMIC has paraphrased certain of Carroll's allegations in her First Amended Complaint, paragraphs 13-15 of Count I, and paragraph 14 of Count II. TKE denies that Carroll's First Amended Complaint, paragraph 15 of Count II, addresses allegations concerning TKE. TKE further states that the pleading is a document that speaks for itself, and TKE filed its Answer in the Carroll Action.**

7.     In addition to the Carroll lawsuit against TKE, Zenith Insurance Company ("Zenith") filed suit against TKE, which is also pending in the United States District Court for the Northern District of Illinois. See Defendant's Summary Judgment Exhibit A, Dk, #80, Exhibit E.

**RESPONSE: TKE admits that Zenith Insurance Company ("Zenith") filed a lawsuit against TKE, which is pending in the U.S. District Court for the Northern District of Illinois (the "Zenith Action"), and that CMIC attached as its Exhibit A the Second Amended Complaint filed in this action, which attaches as Exhibit E the First Amended Complaint that Zenith filed in the Zenith Action [starting at .pdf page 342].**

8.     In its complaint Zenith alleges that Carroll suffered injuries when in an elevator in the course of her employment by Triad. *Id.* at ¶3.

**RESPONSE: TKE admits that CMIC has paraphrased certain of Zenith's allegations in paragraph 3 of its First Amended Complaint. TKE further states that the pleading is a document that speaks for itself, and TKE filed its Answer in the Zenith Action.**

9. Zenith further alleges that Carroll made a workers compensation claim through Triad and that Zenith has paid medical and indemnity obligations as the workers compensation insurer for Triad. *Id.*

**RESPONSE: TKE admits that CMIC has paraphrased certain of Zenith's allegations in paragraph 3 of its First Amended Complaint. TKE further states that the pleading is a document that speaks for itself, and TKE filed its Answer in the Zenith Action.**

10. Zenith is asserting its subrogation rights against TKE to recover all the damage that it has suffered as a result of Carroll's injuries. *Id.* at ¶3 and Counts I-II.

**RESPONSE: TKE admits that CMIC has paraphrased certain of Zenith's allegations in paragraph 3 of its First Amended Complaint and its First and Second Claims for Relief. TKE further states that the pleading is a document that speaks for itself, and TKE filed its Answer in the Zenith Action.**

B. **TKE Tenders**

11. On February 17, 2021, TKE made a tender of the defense, request for insurance coverage and indemnification demand on Triad. See Plaintiff TKE's Summary Judgment Exhibit 13, at CMIC 002487-91.

**RESPONSE: TKE admits that it sent a letter to three different individuals of Triad Senior Living, Inc. ("Triad") on February 17, 2021, and Exhibit 13 to TKE's Local Rule 56.1 Statement [starting at .pdf page 458] is a true and correct copy of such letter. TKE denies any inference or suggestion that TKE tendered its defense and indemnification *only* to Triad,**

as TKE wrote that it "selects the insurer [of Triad] to defend and indemnify TKE on a primary and non-contributory basis." TKE further states that this letter is a document that speaks for itself.

12. This February 17, 2021, tender letter from TKE to Triad states that under Illinois law TKE selects the insurer to defend and indemnify itself on a primary and noncontributory basis but does state which insurer or policy its tender targets. *Id.* at CMIC 2490.

**RESPONSE: TKE admits that CMIC paraphrases portions of the February 17, 2021 letter, and Exhibit 13 to TKE's Local Rule 56.1 Statement [starting at .pdf page 458] is a true and correct copy of such letter. TKE denies any inference or suggestion that, as of February 17, 2021, TKE had specific knowledge concerning the identity of the insurer and any policy numbers of the insurance policies under which Triad, ACHTE and TKE were insured. TKE further states that this letter is a document that speaks for itself.**

13. The February 17, 2021, tender letter then asserts that TKE will protect its interests only until Triad fulfills its contractual obligations to defend and indemnify. *Id.*

**RESPONSE: TKE admits that CMIC paraphrases portions of the February 17, 2021 letter, and Exhibit 13 to TKE's Local Rule 56.1 Statement [starting at .pdf page 458] is a true and correct copy of such letter. TKE further states that this letter is a document that speaks for itself.**

14 On October 12, 2022, TKE sent a supplemental tender letter to CMIC. Plaintiff TKE's Summary Judgment Exhibit 14, at CMIC 000514-16.

**RESPONSE: TKE admits that it sent a letter to Maria Cooper of CMIC and Blake Vail of Triad dated October <u>13</u>, 2022, and Exhibit 14 to TKE's Local Rule 56.1 Statement**

[starting at .pdf page 464] is a true and correct copy of such letter. TKE further states that this letter is a document that speaks for itself.

15. The October 12, 2022, supplemental tender letter from TKE states Triad contractually assumed TKE's liability. *Id.* at CMIC 000515-16.

**RESPONSE: TKE admits that it sent a letter to CMIC and Triad dated October 13, 2022, and Exhibit 14 to TKE's Local Rule 56.1 Statement [starting at .pdf page 464] is a true and correct copy of such letter. TKE denies that this letter included the following text: "Triad contractually assumed TKE's liability." TKE further states that, at the time such letter was drafted, TKE mistakenly believed that it had contracted with Triad when, in fact, ACHTE (to whom CMIC issued its policies) was doing business as "Waterford Estates." TKE further states that this letter is a document that speaks for itself.**

16. The October 12, 2022, supplemental tender letter from TKE then asserts that CMIC covers Triad for its assumption of TKE's liability because the assumption occurred in an insured contract. *Id.*

**RESPONSE: TKE admits that it sent a letter to CMIC and Triad dated October 13, 2022, and Exhibit 14 to TKE's Local Rule 56.1 Statement [starting at .pdf page 464] is a true and correct copy of such letter. TKE denies that this letter included the following text: "CMIC covers Triad for its assumption of TKE's liability." TKE further states that, at the time such letter was drafted, TKE mistakenly believed that it had contracted with Triad when, in fact, ACHTE (to whom CMIC issued its policies) was doing business as "Waterford Estates." TKE further states that this letter is a document that speaks for itself.**

17. The October 12, 2022, supplemental tender letter from TKE does not refer to TKE being insured under the CMIC policies or state it is a selective tender. *Id.* at 000514-16.

**RESPONSE: TKE admits that it sent a letter to CMIC and Triad dated October 13, 2022, and Exhibit 14 to TKE's Local Rule 56.1 Statement [starting at .pdf page 464] is a true and correct copy of such letter. TKE denies that TKE did "not refer to TKE being insured under the CMIC policies." In fact, TKE wrote that "Church Mutual owes both a defense and indemnification to TKE for the elevator accident on November 12, 2018…" TKE also denies that TKE did "not state it is a selective tender," as this letter was specifically supplemental to the February 17, 2021 letter, which cited Illinois Supreme Court authority concerning the targeted tender doctrine. TKE further states that, at the time such letter was drafted, TKE mistakenly believed that it had contracted with Triad when, in fact, ACHTE (to whom CMIC issued its policies) was doing business as "Waterford Estates." TKE further states that this letter is a document that speaks for itself.**

   C.  <u>**TKE Third Party Complaints Against Triad**</u>

18. TKE filed a Third Amended Third-Party Complaint ("TATPC") in the underlying lawsuits that sets forth four counts against Triad. See Defendant's Summary Judgment Exhibit A, Dk., #80, Exhibit F.

**RESPONSE: TKE admits that it filed a Third Amended Third-Party Complaint ("TATPC") against Triad *and* ACHTE, and CMIC attached as its Exhibit A the Second Amended Complaint filed in this action, which attaches as Exhibit F the TATPC filed in the Underlying Action [starting at .pdf page 353].**

19. The TATPC alleges that Carroll was a Triad employee when riding the elevator during her employment at Triad and Triad had worker's compensation insurance for employees such as Caroll at the time of the elevator accident. *Id.* at ¶12.

**RESPONSE:  TKE admits that CMIC has paraphrased certain allegations in paragraph 12 of the TATPC.  TKE further states that the pleading is a document that speaks for itself.**

20.     The TATPC claims that ACHTE owned the property and elevator where the incident allegedly occurred. *Id.* at ¶5.

**RESPONSE:  TKE admits that CMIC has paraphrased certain allegations in paragraph 5 of the TATPC.  TKE further states that the pleading is a document that speaks for itself.**

21.     The TATPC references both the Carroll lawsuit and the Zenith lawsuit and attaches the pleadings from those lawsuits as exhibits. *Id*. at ¶¶8-9 and Exhibits A and B thereto.

**RESPONSE:  TKE admits that CMIC has paraphrased certain allegations in paragraphs 8-9 of the TATPC, and that Exhibits A and B to that pleading were Carroll's First Amended Complaint and Zenith's Original Complaint, respectively.  TKE further states that the pleading is a document that speaks for itself.**

22.     The TATPC further references and attaches as an exhibit a Maintenance Agreement between TKE and Waterford Estates ("'elevator maintenance agreement"), which the TATPC alleges was Triad. *Id.* at ¶14.

**RESPONSE:  TKE admits that CMIC has paraphrased certain allegations in paragraph 14 of the TATPC, and that the Elevator Maintenance Agreement was attached to that pleading as Exhibit C.  TKE further states that, at the time such pleading was drafted, TKE mistakenly believed that it had contracted with Triad when, in fact, ACHTE (to whom CMIC issued its policies) was doing business as "Waterford Estates."  TKE further states that the pleading is a document that speaks for itself.**

23.     In the elevator maintenance agreement, Waterford Estates agrees "to indemnify, defend, save harmless, discharge, and forever acquit [TKE] ... for ... personal injury or death that

are alleged to have been caused by" it. See Plaintiff TKE's Summary Judgment Exhibit 1, at pages 4 and 5.

**RESPONSE: TKE admits that CMIC quotes portions of the Elevator Maintenance Agreement, which TKE attached as Exhibit 1 to its Local Rule 56.1 Statement; however, CMIC uses ellipsis to skip over language, and the text it provided above is incorrect (i.e., CMIC did not include the word "release" in the quoted text). Furthermore, CMIC has not acknowledged that its named insured, ACHTE, was doing business as Waterford Estates. TKE further states that the Elevator Maintenance Agreement is a document that speaks for itself.**

24. However, Waterford Estate's "duty to indemnify does not apply to the extent that the ... personal injury or death is determined to be caused by or resulting from the negligence of" TKE. *Id.*

**RESPONSE: TKE admits that CMIC quotes portions of the Elevator Maintenance Agreement, which TKE attached as Exhibit 1 to its Local Rule 56.1 Statement; however, CMIC uses ellipsis to skip over language and takes the quoted language out of context. Furthermore, CMIC has not acknowledged that its named insured, ACHTE, was doing business as Waterford Estates. TKE further states that the Elevator Maintenance Agreement is a document that speaks for itself.**

25. The TATPC alleges Triad owned, operated, managed, and/or otherwise controlled the elevator that allegedly injured Carroll. See Defendant's Summary Judgment Exhibit A, Dk., #80, Exhibit F, ¶2.

**RESPONSE: TKE admits that paragraph 2 of the TATPC alleges that Triad managed the property. TKE denies that paragraph 2 of the TATPC alleges that Triad "owned, operated"**

and/or **"otherwise controlled the elevator that allegedly injured Carroll." TKE further states the pleading is a document that speaks for itself.**

26.     The TATPC states that TKE has insurance that would cover the underlying lawsuits except for a self-insured retention ("SIR"). *Id.* at ¶31.

**RESPONSE:  Denied.  The TATPC alleges in paragraph 31 that "TKE's insurance policy coverage contains a self-insured retention policy whereby it is responsible for its defense costs."  TKE further states the pleading is a document that speaks for itself.**

27.     Count I is for contribution and alleges that Zenith and Carroll's injuries, if any, were the direct and proximate result of negligent acts and omissions of Triad. *Id.* at ¶¶17-23.

**RESPONSE: TKE admits that Count I of the TATPC is for contribution, and CMIC paraphrases certain allegations from paragraphs 17-23 of that pleading.  TKE further states the pleading is a document that speaks for itself.**

28.     Count II seeks contractual indemnity under the elevator maintenance agreement. *Id.* at ¶¶24-34.

**RESPONSE: TKE admits that Count II of the TATPC is for Breach of Contract – Indemnity, and CMIC has paraphrased certain allegations from paragraphs 24-34 of that pleading.  TKE further states that, at the time such pleading was drafted, TKE mistakenly believed that it had contracted with Triad when, in fact, ACHTE (to whom CMIC issued its policies) was doing business as "Waterford Estates."  TKE further states that the pleading is a document that speaks for itself.**

29.     Count III alleges Triad breached its contractual obligations under the elevator maintenance agreement by failing to procure insurance for it. *Id.* at ¶¶35-46.

**RESPONSE: TKE admits that Count III of the TATPC is for Breach of Contract – Insurance, and CMIC has paraphrased certain allegations from paragraphs 35-46 of that pleading. TKE further states that, at the time such pleading was drafted, TKE mistakenly believed that it had contracted with Triad when, in fact, ACHTE (to whom CMIC issued its policies) was doing business as "Waterford Estates." TKE further states that the pleading is a document that speaks for itself.**

30. Count IV alleges spoilation. *Id.* at ¶¶47-65.

**RESPONSE: TKE admits that Count IV of the TATPC is for Spoliation. TKE further states that the pleading is a document that speaks for itself.**

31. The court in the underlying lawsuits dismissed the indemnity count because there was no assumption of liability in the elevator maintenance agreement as each party only bore responsibility for their own acts. See Defendant's Summary Judgment Exhibit B, Memorandum and Order Dated August 23, 2023, at pages 10-12.

**RESPONSE: TKE admits that the Court in the Underlying Action issued a Memorandum Opinion & Order, dated August 23, 2023, in the Underlying Action ("Order"). TKE further admits that the Court granted Triad's motion to dismiss Count II. TKE denies the remainder of Paragraph 31 to the extent it conflicts with the Court's Order, which is a document that speaks for itself. TKE further states that – at the time of that Order – the Court and the Parties to the Underlying Action were under the mistaken belief that Triad, rather than ACHTE, entered into the Elevator Maintenance Agreement with TKE.**

32. The court also dismissed the spoliation count. *Id*. at pages 14-21.

**RESPONSE: Admitted.**

33.     The court granted summary judgment against Triad on the failure to procure insurance count, because Triad did not add TKE as an additional insured to its insurance policies as the court found the elevator maintenance agreement required Waterford Estates to do. *Id.* at pages 24-36.

**RESPONSE: TKE admits that the Court in the Underlying Action issued the Order in the Underlying Action. TKE further admits that the Court granted TKE's motion for summary judgment on Count III. TKE denies the remainder of Paragraph 33 to the extent it conflicts with the Court's Order. For example, and without limitation, TKE states that the Court provided, in part, as follows: "the question of whether or not TKE should or will be covered under the 'insured contracts' provision of the Church Mutual policies is not before this Court and therefore cannot be resolved at trial." Order at 30. TKE further states that – at the time of that Order – the Court and the Parties to the Underlying Action were under the mistaken belief that Triad, rather than ACHTE, entered into the Elevator Maintenance Agreement with TKE. TKE states that the Order is a document that speaks for itself.**

34.     The parties later consented to the court amending the August 23, 2023, memorandum and order to be against ACHTE, because it, rather than Triad, was the party who entered into the elevator maintenance agreement as Waterford Estates and the parties consented to judgment against ACHTE on that count. See Defendant's Summary Judgment Exhibit C, Consent Amended Judgment Dated October 23, 2024, at pages 6-7.

**RESPONSE: Admitted.**

### D.     CMIC Policies

35.     Church Mutual issued to ACHTE and Triad a multi-peril policy ("CGL Policy") 0330018-02-098770 with a policy period of 03/21/18 to 03/21/19 and Umbrella Liability Policy

("umbrella policy") 0330018-81-098772 with a policy period of 03/21/18 to 03/21/19. See

Plaintiff TKE's Summary Judgment Exhibits 3 & 4.

**RESPONSE: TKE admits that Church Mutual issued the insurance policies that are identified in Paragraph 35, and TKE attached such policies to its Local Rule 56.1 Statement as Exhibits 3 and 4, respectively. TKE disputes any inference or suggestion that the policy numbered 033-0018-81-098772 provides only excess insurance coverage (as CMIC refers to this policy as "umbrella policy") because such policy serves as primary coverage in this instance.**

36.     The CGL Policy states:

***

### GENERAL LIABILITY COVERAGE FORM

***

**A.     BODILY INJURY AND PROPERTY DAMAGE LIABILITY COVERAGE**

1.     Insuring Agreement.

a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

***

b.     This insurance applies to "bodily injury" and "property damage" only if:

(1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

***

2.     Exclusions.

This insurance does not apply to:

a.      "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This Exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

***

e.      "Bodily injury" to:

(1)      An "employee" of the insured arising out of and in the course of:

(a)      Employment by the insured; or
(b)      Performing duties related to the conduct of the insured's business; or

****

This Exclusion applies:

(1)      whether the insured may be liable as an employer or in any other capacity; and
(2)      To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This Exclusion does not apply to liability assumed by the insured under an "insured contract."

***

**H.     DEFINITIONS**

***

13.     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

***

Plaintiff TKE's Summary Judgment Exhibit 3 at CMIC Coverage File 000272, 000273, and 000284.

**RESPONSE: TKE admits that CMIC has quoted portions of the referenced insurance policy; however, such portions have been taken out of context, and CMIC used ellipsis to**

**skip over text. CMIC also did not adhere to the formatting of the policy and, as a result, certain text in Paragraph 36 is misleading – i.e., the provisions beginning "This exclusion applies…" and "This exclusion does not apply…" are directed only to exclusion e. TKE further states that CMIC quotes certain provisions that are irrelevant to TKE's claims for coverage. For example, and without limitation, CMIC cites to insurance policy exclusions, even though CMIC failed to address any exclusions in its briefing addressed to TKE. TKE further states that the insurance policy is a document that speaks for itself and should be interpreted and applied in accordance with principles of applicable law.**

37. The umbrella policy, which expressly designates the CGL Policy as underlying insurance, states:

\*\*\*

**CHURCH MUTUAL INSURANCE COMPANY**
**UMBRELLA LIABILITY POLICY**
**SCHEDULE OF UNDERLYING INSURANCE**

**Policy Number**: 0330018-81-098772

| TYPE OF INSURANCE | LIMIT OF INSURANCE |
|---|---|
| GENERAL LIABILITY | $ 3,000,000 GENERAL AGGREGATE<br>$ 1,000,000 PRODUCTS/COMPLETED OPERATIONS AGGREGATE<br>$ 1,000,000 EACH OCCURRENCE (BODILY INJURY AND PROPERTY DAMAGE)<br>$ 1,000,000 PERSONAL AND ADVERTISING INJURY |

\*\*\*

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY COVERAGE**

1. Insuring Agreement.

a.   We will pay on behalf of the insured "ultimate net loss" which the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. No other obligations or liability to pay sums or perform acts or services is covered unless explicitly provided for under Defense or Supplementary Payments.

This insurance applies to "bodily injury" or "property damage" only if:

(1)   The "bodily injury" or "property damage" occurs during the policy period of this policy; or

(2)   "Underlying insurance" applies to the "bodily injury" or "property damage" during the policy period of this policy or would apply but for exhaustion of its limits of insurance.

The "bodily injury" or "property damage" must be caused by an "occurrence" that takes place in the "coverage territory."

\*\*\*\*

2.   Defense.

a.   We will defend "suits" against the insured seeking damages for "bodily injury" or "property damage" to which this insurance applies subject to the following:

(1)   We have the right but not the duty to defend "suits" that are covered by the "underlying insurance."

(2)   We have the right and duty to defend "suits" that are not covered by "underlying insurance," including when the applicable limit of insurance in the "underlying insurance" is exhausted.

However, we will have no duty to defend the insured against any "suits" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

\*\*\*

**SECTION VI -DEFINITIONS**

\*\*\*

18.   "Retained Limit" means the greater of:

a.   That amount of "underlying insurance" applicable to any claim or "suit," whether such insurance is collectible or not; or

b.   The amount of "self-insured retention" as shown in the Declarations Page.

ME1 52993932v.1
Doc:901904_1

16

\*\*\*

22.      "Ultimate net loss" means those sums that are in excess of the "retained limit." "Ultimate net loss" maybe established by adjudication, arbitration, or a compromise settlement to which we have previously agreed in writing. "Ultimate net loss" shall be reduced by any recoveries or salvages which have been paid or will be collected, but the amount of "ultimate net loss" shall not include any expenses incurred by any insured, by us, or by any "underlying insurer."

23.      "Underlying insurance" means the coverage(s) afforded under insurance policies designated in the Declarations Page. "Underlying insurance" also includes any other insurance available to the insured, except such insurance as may be purchased to apply specifically in excess of this policy.

24.      "Underlying insurer" means any company issuing any policy of "underlying insurance."

\*\*\*

## SECTION V – EXCESS POLICY CONDITIONS

\*\*\*

10.      Other insurance.
If other valid and collectible insurance is available to the insured for "ultimate net loss" we cover under this policy, our obligations under this policy are limited as follows:

    a.      Excess Insurance.

    This insurance is excess over any other insurance, whether primary, excess, contingent, or on any other basis, except such insurance as is specifically purchased to apply in excess of this policy's Limit of Insurance.

\*\*\*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EMPLOYERS LIABILITY – FOLLOWING FORM**

This endorsement modifies insurance provided under the Umbrella Liability Policy.

The following change is made to the Umbrella Liability Policy.

**A.      EMPLOYERS' LIABILITY – FOLLOWING FORM**

ME1 52993932v.1
Doc:901904_1

17

1.      This insurance does not apply to:

     a.      Injury sustained by any employee, or

     b.      Any obligation of the insured to indemnify another because of injury to an employee, that arises out of and in the course of the employees' employment by the insured, except to the extent that such insurance is provided by "underlying insurance."

2.      When this insurance does apply, the Limit of Insurance shall be the Each Occurrence Limit of Insurance that is shown in the Declarations Page.

***

Plaintiff TKE's Summary Judgment Exhibit 4 at CMIC Coverage File 000404-5, 000410-11, 000425-26, and 000444.

**RESPONSE: TKE admits that CMIC has quoted portions of the referenced insurance policy; however, such portions have been taken out of context, and CMIC used ellipsis to skip over text. For example, CMIC did not include subsection c. under "2. Defense," whixh provides: "Expenses we incur in the defense of 'suits' will not reduce the Limits of Insurance." Additionally, CMIC did not quote relevant provisions of such policy, such as the policy's definition of "insured." TKE further states that CMIC quotes certain provisions that are irrelevant to TKE's claims for coverage. For example, and without limitation, CMIC cites to an insurance policy exclusion, even though CMIC failed to address any exclusions in its briefing addressed to TKE, and CMIC's amended pleading makes clear that TKE is insured under this Targeted Policy (*see* Declaration of Craig K. Kaplin, Esq., which is attached as Exhibit 2 to TKE's Local Rule 56.1 Statement). TKE further states that the insurance policy is a document that speaks for itself and should be interpreted and applied in accordance with principles of applicable law.**

E.     **TKE Policies**

38.     HDI Global Insurance Company issued a commercial lines policy to Thysskenkrupp Elevator, which provided commercial general liability coverage, policy number GLD1257404, with effective dates of 10-1-18 through 10-1-19 (TK Elevator Policy") and issued a commercial lines policy to Thysskenkrupp North America, Inc, which provided commercial general liability coverage, policy number GLD1108510, with effective dates of 10-1-18 through 10-1-19 (North American Policy"). See Plaintiff TKE's Summary Judgment Exhibit 22, TK 006265-0062404, Plaintiff TKE's Summary Judgment Exhibit 22, Scott Silitsky Declaration, ¶4 and Defendant's Summary Judgment Exhibit D, TK Elevator Policy, TK 006405-006516., HDI Global Insurance Company also See TKE's Summary Judgment Exhibit 21 and Plaintiff TKE's Summary Judgment Exhibit 22, Silitsky Declaration ¶5.

**RESPONSE: TKE denies that HDI policy numbered GLD1257404 had a policy period of October 1, 2018 to October 1, 2019, and notes that CMIC attached as Exhibit D to its Statement of Facts the HDI Policy numbered GLD1257405, which has a policy period of October 1, 2018 to October 1, 2019.  TKE admits that insurance policy numbered GLD1108510 was attached at Exhibit 21 to TKE's Local Rule 56.1 Statement.  TKE denies CMIC's summary description of coverage and states the insurance policies are documents that speak for themselves and must be interpreted and applied in accordance with applicable law.  TKE admits that its Deputy General Counsel, Scott Silitsky, issued a Declaration that was attached as Exhibit 22 to TKE's Local Rule 56.1 Statement, and that document speaks for itself.**

39.     TKE submitted a declaration from its Depute General Counsel, which states that the TK Elevator Policy's limits have been exhausted, but that the North America Policy is

available to it and potentially provides coverage for the underlying lawsuits. See TKE Exhibit 22, TKE's Silitsky Declaration, ¶¶6-7.

**RESPONSE: TKE admits that CMIC paraphrases certain portions of Mr. Silitsky's Declaration. TKE further states that the Declaration is a document that speaks for itself.**

40.     The North American Policy, whose Declarations do not list any underlying insurance, states:

\*\*\*

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

\*\*\*

**COVERAGE A- BODILY INJURY AND PROPERTY DAMAGE LIABILITY COVERAGE**

1.      Insuring Agreement.

    a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .

\*\*\*

    b.      This insurance applies to "bodily injury" and "property damage" only if:

        (1)      The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

\*\*\*

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

\*\*\*

4.  Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

a.  Primary Insurance

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

b.  Excess Insurance

(1)  This insurance is excess over:

(a)  Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i)  That is Fire, Extended Coverage, Builders Risk, Installation Risk or similar coverage for "your work";

(ii)  That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(iii)  That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(iv)  If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** -Coverage **A** -- Bodily Injury And Property Damage Liability.

(b)  Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

\*\*\*

**ENDORSEMENT – OTHER INSURANCE CLAUSE**

PARAGRAPH 4 B (1)(C) OF SECTION IV – COMMERCIAL LIABILITY CONDITIONS IS ADDED:

C.     ANY OTHER AVAILABLE AND COLLECTIBLE INSURANCE THAT IS REQUIRED BY CONTRACT TO BE MAINTAINED FOR THE BENEFIT OF YOU BY A THIRD PARTY.

***

**SELF-INSURED RETENTION ENDORSEMENT**

**(ALAE REDUCE SELF-INSURED RETENTION)**

APPLICATION OF ENDORSEMENT

***

3.     IN THE EVENT OF ANY "OCCURRENCES", CLAIMS OR "SUITS" WHICH HAVE OR MAY RESULT IN PAYMENTS WITHIN THE SELF-INSURED RETENTION AMOUNT OR THE LIMITS OF INSURANCE:

A.     YOU MUST NOTIFY US IN WRITING AS SOON AS PRACTICABLE BUT NOT LATER THAN 60 DAYS AFTER YOU RECEIVE NOTICE OF ANY "OCCURRENCE", CLAIMS OR "SUIT" INVOLVING:

1.     A FATALITY;

2.     DISMEMBERMENT OR AMPUTATION;

3.     PARAPLEGIA OR QUADRIPLEGIA;

4.     LOSS OR IMPAIRMENT OF EYESIGHT OR HEARING;

5.     ANY LOSS WHICH IN YOUR REASONABLE JUDGMENT, TAKING INTO ACCOUNT PAST OR ANTICIPATED "ALLOCATED LOSS ADJUSTMENT EXPENSES" IN CONNECTION WITH THE LOSS, MAY RESULT IN PAYMENTS EQUAL TO OR EXCEEDING $ 50% OF THE SELF-INSURED RETENTION;

6.     BRAIN INJURIES;

7.     BURNS; OR

B.     ON A QUARTERLY BASIS, YOU OR YOUR LOSS ADJUSTING REPRESENTATIVE MUST PROVIDE US WITH A WRITTEN SUMMARY OF ALL "OCCURRENCES", CLAIMS OR "SUITS" WHICH HAVE OR MAY RESULT IN PAYMENTS WITHIN THE SELF-INSURED RETENTION AMOUNT. THIS WRITTEN SUMMARY MUST SHOW:

1.   THE DATE OF THE "OCCURRENCE," AND

2.   THE NAME(S) OF THE INJURED PERSON(S) OR IDENTIFICATION OF THE DAMAGED PROPERTY, AND

3.   A DESCRIPTION OF THE INJURY OR DAMAGE, AND

4.   THE AMOUNT PAID OR SET ASIDE AS A RESERVE,

INCLUDING "ALLOCATED LOSS ADJUSTMENT EXPENSES", RESULTING FROM THE "OCCURRENCE", CLAIM OR "SUIT".

See TKE's Summary Judgment Exhibit 21 at TK 006268-9, 006287-88, 006291-3, 006305, 006316-19, & 006329.

**RESPONSE: TKE admits that the referenced policy ("HDI's Second Layer Policy") was attached as Exhibit 21 to TKE's Local Rule 56.1 Statement. TKE denies any inference or suggestion that there is no other insurance policy that responds to a covered claim *before* HDI's Second Layer Policy is triggered. TKE admits that CMIC has quoted portions of HDI's Second Layer Policy; however, such portions have been taken out of context, and CMIC used ellipsis to skip over text. Furthermore, TKE states that CMIC inaccurately quoted certain policy language. For example, Section I, Coverage A.1.b(1) does not end with the word "and." Additionally, when purporting to quote from Endorsement MAN-GL (01/02), CMIC failed to use any ellipsis to indicate it had skipped language. TKE further states that CMIC quotes certain provisions that are irrelevant to TKE's claims for coverage. For example, and without limitation, CMIC cites to the referenced endorsement, even though CMIC failed to mention the same in its briefing addressed to TKE. TKE further states that the insurance policy is a document that speaks for itself and should be interpreted and applied in accordance with principles of applicable law.**

Dated: May 19, 2025

Respectfully submitted,

**TKE ELEVATOR CORPORATION,**

By: _Craig K. Kaplin, ARDC #6309383_
    One of Its Attorneys

    Craig K. Kaplin, ARDC #6309383
    MOLZAHN, REED & ROUSE, LLC
    17 North State Street, Suite 1590
    Chicago, IL 60602
    (T): (312) 553-8631
    ckk@m2rlaw.com

    and

    Sherilyn Pastor (admitted _pro hac vice)_
    Jennifer Black Strutt (admitted _pro hac vice)_
    MCCARTER & ENGLISH, LLP
    Four Gateway Center
    100 Mulberry Street
    Newark, NJ 07102
    T: (973) 639-2070
    spastor@mccarter.com
    jstrutt@mccarter.com

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on May 19, 2025, a copy of TKE's Responses to CMIC's Statement of Undisputed Material Facts was filed electronically with this Court, causing a copy of the foregoing document to be delivered via the Court's CM/ECF Electronic Filing System to all Counsel of Record.

By: *Craig K. Kaplin, ARDC #6309383*
One of Its Attorneys


Craig K. Kaplin, ARDC #6309383
MOLZAHN, REED & ROUSE, LLC
17 North State Street, Suite 1590
Chicago, IL 60602
(T): (312) 553-8631
ckk@m2rlaw.com