UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TK ELEVATOR CORPORATION AND TRIAD SENIOR LIVING, INC., | |
| Plaintiffs, | No. 1:23-CV-17173 |
| v. | Judge Edmond E. Chang |
| CHURCH MUTUAL INSURANCE COMPANY, S.I., | |
| Defendant. | |

MEMORANDUM OPINION AND ORDER

This insurance dispute arises from two underlying cases about an elevator accident. After Maggie Carroll was injured in an elevator incident at work, Carroll—and, in a separate suit, the workers' compensation insurer that had made some payments to her—sued TK Elevator Corporation, which serviced and maintained the elevator. R. 94, Def.'s Resp. to TK's SOF ¶¶ 26, 28–29; R. 87-5, TK's Exh. 5, Carroll's First Am. Compl. ¶¶ 9–14; R. 87-6, TK's Exh. 6, Zenith's First Am. Compl. ¶ 3.[1] In both suits, TK Elevator in turn brought third-party claims against Triad Senior Living, Inc., Carroll's employer and the manager of the building where she was injured. Def.'s Resp. to TK's SOF ¶¶ 27, 40; R. 87-10, TK's Exh. 10, Third Am. Third-Party Compl. in Carroll Suit ¶¶ 2, 23; R. 87-11, TK's Exh. 11, Third Am. Third-Party Compl. in Zenith Suit ¶¶ 2, 23. TK Elevator and Triad each made a tender of defense

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

and indemnification to Triad's insurer, Church Mutual Insurance Company, S.I. R. 87, TK's SOF ¶¶ 42–43; R. 87-13, TK's Exh. 13, Feb. 17, 2021, TK Elevator Letter at 5; R. 87-15, TK's Exh. 15, Jan. 3, 2024, Church Mutual Letter at 2.[2] Church Mutual denied that it has a duty to defend or indemnify TK Elevator, but has defended Triad in the underlying suits. Def.'s Resp. to TK's SOF ¶¶ 43, 46; Jan. 3, 2024, Church Mutual Letter at 2; R. 87-16, TK's Exh. 16, Mar. 10, 2021, Church Mutual Letter at 2.

TK Elevator and Triad then brought this suit seeking, in part, a declaratory judgment that Church Mutual has the duty to defend and indemnify them in the underlying suits. Def.'s Resp. to TK's SOF ¶¶ 1–2; R. 80, Second Am. Compl. ¶ 87.[3] TK Elevator and Church Mutual now cross-move for partial summary judgment on the issue of Church Mutual's duty to defend TK Elevator in the underlying suits. R. 85, TK's Mot.; R. 92, Def.'s Mot. Church Mutual also moves for partial summary judgment on its duty to defend Triad in the underlying suits. Def.'s Mot.

As explained by this opinion, because Church Mutual's insurance policy requires TK Elevator to first exhaust underlying insurance for its defense, and TK

---

[2]Unless otherwise noted, citations are to the PDF page numbers of the filing.

[3]This Court has diversity jurisdiction over this case. 28 U.S.C. § 1332. Specifically, TK Elevator is a Delaware corporation and has its principal place of business in Georgia, Def.'s Resp. to TK's SOF ¶ 4; Second Am. Compl. ¶ 8; Triad is a Texas corporation (with no principal place of business because it is no longer in business), Def.'s Resp. to TK's SOF ¶ 5; Second Am. Compl. ¶ 7; and Church Mutual is a Wisconsin corporation with a principal place of business in Wisconsin, Def.'s Resp. to TK's SOF ¶ 6; Second Am. Compl. ¶ 9. And the amount-in-controversy requirement is met because TK Elevator and Triad seek a defense and indemnification from Church Mutual that plausibly cost over $75,000. Def.'s Resp. to TK's SOF ¶ 7; Second Am. Compl. ¶¶ 46, 78–82.

2

Elevator has not done so, TK Elevator's motion is denied and Church Mutual's cross-motion is granted. But there are genuine disputes of fact on whether equitable estoppel or waiver prevent Church Mutual from withdrawing its defense of Triad in the underlying suits, so Church Mutual's motion for partial summary judgment against Triad is denied.

## I. Background

TK Elevator and Church Mutual agree that their cross-motions for partial summary judgment turn solely on the *legal* interpretations of the insurance contracts. *See* R. 81, Joint Mot. for Permission to Cross-Move for Partial Summary Judgment ¶ 4; R. 93, Def.'s Br. at 1–4; R. 99, TK's Reply Br. at 4. So the facts recited below are undisputed—at least as between TK Elevator and Church Mutual. Triad, in contrast, raises several disputes of fact in its opposition to Church Mutual's motion for partial summary judgment. *See* R. 101, Triad's Resp. Br. at 5. So when discussing the background relevant to Triad's opposition to summary judgment, the Court notes any disputed facts and views the evidence in the light most favorable to Triad, the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

### A. Maintenance Agreement and Insurance Policies

In 2015, TK Elevator contracted to service and maintain elevators at Waterford Estates, a senior living facility in Hazel Crest, Illinois. Def.'s Resp. to TK's SOF ¶ 11; R. 87-1, TK's Exh. 1, Elevator Maintenance Agreement at 2; Third Am. Third-Party Compl. in Carroll Suit ¶ 11. Affordable Community Housing Trust Epsilon Inc., doing business as Waterford Estates, owned the property. Def.'s Resp. to TK'S SOF

3

¶ 10; Elevator Maintenance Agreement at 2; R. 87-2, TK's Exh. 2, Kaplin Decl. ¶ 3. Triad managed the senior living facility and employed Carroll there. Def.'s Resp. to TK's SOF ¶ 27; Kaplin Decl. ¶ 5.

Affordable Community Housing and Triad took out two insurance policies with Church Mutual to cover Waterford Estates from March 2018 to March 2019. R. 100, TK's Resp. to DSOF ¶ 35; R. 87-3, TK's Exh. 3, CGL Policy at 6, 10; R. 87-4, TK's Exh. 4, Umbrella Policy at 16. The first Church Mutual policy—known as the "CGL Policy"—offers Commercial General Liability coverage for bodily injuries and other losses. R. 102, Triad's Resp. to DSOF ¶¶ 35–36; CGL Policy at 102. The policy requires Church Mutual to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury'" and "defend the insured against any 'suit' seeking those damages." Triad's Resp. to DSOF ¶ 36; CGL Policy at 102. But the CGL Policy contains an exclusion for bodily injuries to employees arising out of the course of their employment (which the parties call the Employee Exclusion). Triad's Resp. to DSOF ¶ 36; CGL Policy at 103.

The second Church Mutual policy—which the Court will call the "Umbrella Policy"— "is excess over any other insurance, whether primary, excess, contingent, or on any other basis, except such insurance as is specifically purchased to apply in excess of" the policy. Def.'s Resp. to TK's SOF ¶ 57; Umbrella Policy at 34. The Umbrella Policy covers losses from bodily injuries only if "'[u]nderlying insurance' applies to the 'bodily injury' … or would apply but for exhaustion of its limits of insurance." Def.'s Resp. to TK's SOF ¶ 17; Umbrella Policy at 24. And the policy imposes a duty

4

to defend against suits seeking damages for bodily injury "that are not covered by 'underlying insurance,' including when the applicable limit of insurance in the 'underlying insurance' is exhausted." Def.'s Resp. to TK's SOF ¶ 21; Umbrella Policy at 24. The Umbrella Policy defines "underlying insurance" as "the coverages(s) afforded under insurance policies designated in the Declarations Page"—which includes the CGL Policy—and "any other insurance available to the insured, except such insurance as may be purchased to apply specifically in excess of this policy." TK's Resp. to DSOF ¶ 37; Umbrella Policy at 40. Like the CGL Policy, the Umbrella Policy also contains an Employee Exclusion for bodily injuries to employees. Triad's Resp. to DSOF ¶ 37; Umbrella Policy at 58.

Neither policy names TK Elevator as an additional insured. Def.'s Resp. to TK's SOF ¶¶ 13–14; CGL Policy at 6; Umbrella Policy at 16; R. 95-2, Def.'s Exh. B, Underlying-Suit Opinion at 24–25. But the Umbrella Policy does define "insured" to include "[a]ny person or organization for whom [Affordable Community Housing or Triad] agreed in writing to provide insurance" related to Waterford. Def.'s Resp. to TK's SOF ¶ 16; Umbrella Policy at 31. Affordable Community Housing entered into an Elevator Maintenance Agreement with TK Elevator, under which it agreed to name TK Elevator and its affiliates "as additional insureds in [its] liability and any excess (umbrella) liability insurance policy(ies)" that cover elevator-related losses and injuries at Waterford. Def.'s Resp. to TK's SOF ¶¶ 10, 12; Elevator Maintenance Agreement at 2, 5–6; Kaplin Decl. ¶ 3. Thus, TK Elevator and Church Mutual agree that TK

5

Elevator is an "insured" under the Umbrella Policy. Def.'s Resp. to TK's SOF ¶ 53; TK's Reply Br. at 5.

TK Elevator itself has two insurance policies, through HDI Global Insurance Company, that provide coverage for October 2018 to October 2019. TK's Resp. to DSOF ¶ 38; R. 95-4, Def.'s Exh. D, HDI First Layer Policy at 4; R. 87-21, TK's Exh. 21, HDI Second Layer Policy at 5. Both policies offer Commercial General Liability coverage and require HDI to indemnify and defend TK Elevator against suits for bodily injury. TK's Resp. to DSOF ¶ 38; HDI First Layer Policy at 24; HDI Second Layer Policy at 31. Relevant here, one of the HDI policies—which the Court will refer to as the "HDI Policy"—states that it "is primary except when Paragraph b. below applies." TK's Resp. to DSOF ¶ 40; HDI Second Layer Policy at 42. Paragraph b states that the HDI Policy "is excess over ... [a]ny other primary insurance ... for which [TK Elevator] ha[s] been added as an additional insured" or "any other available and collectible insurance that is required by contract to be maintained for the benefit of [TK Elevator] by a third party." TK's Resp. to DSOF ¶ 40; HDI Second Layer Policy at 42, 66.

## B. Underlying Suits

In November 2018, Maggie Carroll was allegedly injured when an elevator at Waterford fell several floors. Def.'s Resp. to TK's SOF ¶ 26; Carroll's First Am. Compl. ¶¶ 5, 8–9. Carroll made a workers' compensation claim to Zenith Insurance Company, Triad's workers' compensation insurer, and received reimbursement for medical and other expenses. TK's Resp. to DSOF ¶ 9; Zenith's First Am. Compl. ¶¶ 7–8. Carroll

6

then sued TK Elevator for negligence in state court, and TK Elevator removed the case to federal court. Def.'s Resp. to TK's SOF ¶ 28; Carroll's First Am. Compl. ¶ 13; Kaplin Decl. ¶ 6. Zenith also brought a subrogation action in federal court against TK Elevator to recover the payments that it had made to Carroll. TK's Resp. to DSOF ¶¶ 7, 10; Zenith's First Am. Compl. ¶ 3. The two suits were consolidated for discovery in this District. Def.'s Resp. to TK's SOF ¶ 30; Kaplin Decl. ¶ 8.

In both suits, TK Elevator in turn brought third-party complaints against Triad and Affordable Community Housing. Def.'s Resp. to TK's SOF ¶ 40; Third Am. Third-Party Compl. in Carroll Suit ¶¶ 23, 72; Third Am. Third-Party Compl. in Zenith Suit ¶¶ 23, 72. Among other claims, TK Elevator seeks contribution from Triad for any judgment entered against TK Elevator in the Carroll and Zenith suits. R. 103, Def.'s Resp. to Triad's SOF ¶ 18; Third Am. Third-Party Compl. in Carroll Suit ¶ 23; Third Am. Third-Party Compl. in Zenith Suit ¶ 23.

The underlying suits are still ongoing. In August 2023, the assigned judge in those cases issued an opinion that resolved most of TK Elevator's third-party claims, so only the contribution claim remains pending against Triad. Triad's Resp. to DSOF ¶¶ 31–33; Underlying-Suit Opinion at 10–21, 35–36.

### C. Coverage Positions and This Suit

After Carroll and Zenith brought the underlying suits, TK Elevator sent a letter to Triad making "a tender of the defense, request for insurance coverage, and indemnification for both the Carroll and Zenith matters" from Triad's insurer. Def.'s Resp. to TK's SOF ¶ 42; Feb. 17, 2021, TK Elevator Letter at 5. In response, Church

Mutual sent several coverage-position letters to TK Elevator and Triad. Def.'s Resp. to TK's SOF ¶ 44; Mar. 10, 2021, Church Mutual Letter at 2; R. 87-19, TK's Exh. 19, June 18, 2021, Church Mutual Letter at 2; R. 87-17, TK's Exh. 17, Dec. 2, 2022, Church Mutual Email at 2. In a March 2021 letter, Church Mutual rejected TK Elevator's demand for defense and indemnification because TK Elevator was not listed as an "additional insured" on the CGL Policy, and because Church Mutual believed that the elevator failure was connected to TK Elevator's negligence. Def.'s Resp. to TK's SOF ¶¶ 47–48; Mar. 10, 2021, Church Mutual Letter at 2–3. In a June 2021 letter to Triad, Church Mutual "note[d] that there is the potential [TK Elevator] may qualify as an insured under the umbrella policy regarding indemnity under that policy. However, there is no duty to defend [TK Elevator] under either policy." Def.'s Resp. to TK's SOF ¶ 53; June 18, 2021, Church Mutual Letter at 2. Finally, in a December 2022 email to TK Elevator, Church Mutual declined to accept TK Elevator's tender of defense and indemnity based on the CGL Policy's Employee Exclusion. Def.'s Resp. to TK's SOF ¶¶ 49–51; Dec. 2, 2022, Church Mutual Email at 2.

As to the third-party claims against Triad, Church Mutual's June 2021 letter "acknowledge[d] its duties to defend and indemnify [Triad] as to the contribution claim, but reserve[d] its rights as to any duty to indemnify" Triad for the other claims. Def.'s Resp. to Triad's SOF ¶ 8; June 18, 2021, Church Mutual Letter at 2. Church Mutual alleges that it sent a follow-up letter to Triad in August 2021 in which it "reserve[d] its right to deny coverage under the employee exclusion in the Primary Policy … and Umbrella Policy." Def.'s Resp. to Triad's SOF ¶¶ 11, 16; R. 87-20, TK's

8

Exh. 20, Aug. 2021 Church Mutual Letter at 2. But Triad denies receiving this letter. Def.'s Resp. to Triad's SOF ¶ 17; R. 102-4, Triad's Exh. D, Vail Decl. ¶ 7. In May 2023, Church Mutual forwarded to Triad the December 2022 email in which Church Mutual stated that the Employee Exclusion applied to the underlying suits. Def.'s Resp. to Triad's SOF ¶ 8; R. 103-1, Def.'s Exh. G, May 8, 2023, Church Mutual Email at 1–2. But throughout the course of the underlying suits, Church Mutual has defended Triad against TK Elevator's third-party claims. Def.'s Resp. to Triad's SOF ¶¶ 4–5; Vail Decl. ¶ 10.

In December 2023, TK Elevator and Triad brought this suit, seeking a declaratory judgment that Church Mutual has the duty to defend and indemnify them in the underlying suits. Def.'s Resp. to TK's SOF ¶ 1; R. 1, Notice of Removal ¶ 1; Second Am. Compl. ¶ 87. TK Elevator and Triad also brought breach-of-contract and bad-faith claims based on Church Mutual's failure to defend and indemnify them. Second Am. Compl. ¶¶ 97, 112.

After the start of this suit, Church Mutual sent another letter to TK Elevator and Triad with an updated coverage position. Def.'s Resp. to TK's SOF ¶ 55; Jan. 3, 2024, Church Mutual Letter at 2–3. The letter stated that Church Mutual has no duty to defend TK Elevator because the Umbrella Policy is excess over TK Elevator's HDI Policy, which has not been exhausted. Def.'s Resp. to TK's SOF ¶ 55; Jan. 3, 2024, Church Mutual Letter at 3. And it noted that Church Mutual's defense of Triad was "provided under a full and complete reservation of rights" to deny coverage based on the Employee Exclusion. Def.'s Resp. to Triad's SOF ¶ 8; Jan. 3, 2024, Church

9

Mutual Letter at 2. Church Mutual maintains these latest coverage positions in its summary judgment briefing. *See generally* Def.'s Br.

TK Elevator and Church Mutual now cross-move for partial summary judgment on whether Church Mutual has a duty to defend TK Elevator in the underlying suits. TK's Mot. at 1; Def.'s Mot. at 1–2. And Church Mutual moves for partial summary judgment on whether it has a duty to defend Triad in the underlying suits. Def.'s Mot. at 2.

## II. Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott*, 550 U.S. at 378. The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539

F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

In deciding cross-motions for summary judgment, the Court views the facts in the light most favorable to the respective non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). So to the extent that there are factual disputes, when the Court evaluates TK Elevator's summary judgment motion, Church Mutual gets the benefit of reasonable inferences; conversely, when evaluating Church Mutual's motion, the Court gives TK Elevator the benefit of the doubt. *See Tompkins v. Cent. Laborers' Pension Fund*, 712 F.3d 995, 999 (7th Cir. 2013).

## III. Analysis

As an initial matter, the Court must decide what state's substantive law applies to this case. *See Westfield Ins. Co. v. Vandenberg*, 796 F.3d 773, 777 (7th Cir. 2015) (holding that state law governs the interpretation of insurance policies in diversity cases). None of the relevant insurance policies include a choice-of-law provision. *See generally* CGL Policy; Umbrella Policy; HDI Policy. Although the parties do not expressly address this issue, all three assume that Illinois law governs. *See* R. 86, TK's Br. at 12–13 (relying on Illinois insurance law); Def.'s Br. at 16–17 (same); Triad's Resp. Br. at 14 (same). The Court agrees. Because subject matter jurisdiction in this case is premised on diversity jurisdiction, the Court applies "the substantive law of the forum state, here Illinois." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 876

11

(7th Cir. 2005); *see also Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 587 n.1 (7th Cir. 2012).

Turning to the substance of the dispute, the Court first addresses whether Church Mutual has a duty to defend TK Elevator in the underlying suits, which is the subject of TK Elevator's motion and Church Mutual's cross-motion. *See* TK's Mot. at 1; Def.'s Mot. at 1–2. Next is whether Church Mutual has a duty to defend Triad in the underlying suits, which is the subject of Church Mutual's motion. Def.'s Mot. at 2.

### A. Church Mutual's Duty to Defend TK Elevator

As mentioned earlier, TK Elevator and Church Mutual agree that their cross-motions for summary judgment turn solely on the proper interpretation of the parties' insurance contracts. TK's Reply Br. at 4; Def.'s Br. at 1–4. And because this is a legal question, *see Citizens Ins. Co. of Am. v. Wynndalco Enters., LLC*, 70 F.4th 987, 995 (7th Cir. 2023), they agree that it is appropriate for the Court to resolve the issue at summary judgment, rather than give the question to a jury, Joint Mot. for Permission to Cross-Move for Partial Summary Judgment ¶ 4.

Both parties make concessions in their briefs that narrow the scope of their dispute. TK Elevator does not contest Church Mutual's position that it has no duty to defend under the CGL Policy. TK's Reply Br. at 5. TK Elevator thus argues only that the Umbrella Policy requires Church Mutual to provide a defense in the underlying suits. *Id.* For its part, Church Mutual concedes that TK Elevator might be an "insured" under the Umbrella Policy. Def.'s Resp. to TK's SOF ¶ 53. And Church

12

Mutual does not argue that any of the Umbrella Policy's exclusions apply to TK Elevator. *See generally* Def.'s Br. at 14–26.

Instead, Church Mutual argues that it has no duty to defend because TK Elevator has underlying insurance that must cover its defense costs first. Def.'s Br. at 18. Specifically, Church Mutual contends that TK Elevator's two HDI policies count as "underlying insurance" that must be exhausted before the Umbrella Policy. *Id.* at 18–19. TK Elevator says that it has already exhausted one of the HDI policies. Def.'s Resp. to TK's SOF ¶ 62; R. 87-22, TK's Exh. 22, Silitsky Decl. ¶ 6.[4] And TK Elevator argues that the other policy—what the Court calls the HDI Policy, because it is the only relevant HDI policy here—is excess over Church Mutual's Umbrella Policy, not the other way around. TK's Br. at 15–18.

Ultimately, then, the parties' dispute turns on the relationship between two policies: Church Mutual's Umbrella Policy and the HDI Policy. *See* TK's Br. at 15–18; Def.'s Br. at 2–3. If the Umbrella Policy is excess over the HDI Policy, then TK Elevator must first rely on the HDI Policy to cover its defense costs in the underlying

---

[4]Church Mutual argues that TK Elevator has not introduced adequate evidence to prove that it exhausted this HDI policy because TK Elevator relies on a declaration from its general counsel, rather than documentary evidence of payments made under the policy. Def.'s Br. at 19 (quoting *Sinclair Oil Corp. v. Allianz Underwriters Ins. Co.*, 39 N.E.3d 570, 586 (Ill. App. Ct. 2015) ("The umbrella insurer is entitled to more than an insured's allegation of exhaustion. … [T]he insurer must be in possession of some evidence of actual payments, made by the underlying insurance company ….")); *see* Silitsky Decl. ¶¶ 1, 6. The Court need not opine on this issue because Church Mutual's briefing assumes that TK Elevator did exhaust the policy. *See* Def.'s Br. at 19. In any event, the declaration is likely sufficient evidence because the general counsel attests to facts within his personal knowledge, Silitsky Decl. ¶ 1, and Church Mutual does not identify any unfulfilled discovery requests for documentary evidence of payments made under the policy.

suits, and Church Mutual does not have a duty to defend. But if the opposite is right—that is, the HDI Policy is excess over the Umbrella Policy—then the Umbrella Policy's coverage applies first, and Church Mutual has a duty to defend TK Elevator in the underlying suits.

### 1. Underlying Insurance

To resolve this dispute, the Court must examine the text of the two insurance policies. "Typically, a primary policy covers the first dollar of an insured's loss," whereas an excess policy "attaches only after the primary insurance has been exhausted." *Great Am. Ins. Co. v. State Farm Fire & Cas. Co.*, 104 F.4th 1011, 1015 (7th Cir. 2024) (cleaned up).[5] But the labels of each insurance policy are less important than the insurers' expectations—"that is, what each insurer has agreed to cover in the respective policies." *Id.* at 1016. As with any contract, "[r]egardless of what the usual primary policy or the usual umbrella policy provides, … the parties to an insurance agreement have the power to define the terms, including the limits of the defense obligations." *Id.* Thus, under Illinois law, the Court's "primary objective is to ascertain and give effect to the intention of the parties, as expressed in the policy language." *Westfield Ins. Co.*, 796 F.3d at 777–78 (cleaned up).

Here, the Umbrella Policy mandates that Church Mutual has "the duty to defend 'suits' that are not covered by 'underlying insurance,' including when the

---

[5]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

applicable limit of insurance in the 'underlying insurance' is exhausted." TK's Resp. to DSOF ¶ 37; Umbrella Policy at 24. At the same time, however, Church Mutual has "the right *but not the duty* to defend 'suits' that are covered by the 'underlying insurance.'" Umbrella Policy at 24 (emphasis added). Thus, if the HDI Policy is "underlying insurance" and covers TK Elevator in the underlying suits, then Church Mutual does not have a duty to defend. TK Elevator agrees that the HDI Policy may provide coverage in the underlying suits, TK's Resp. to DSOF ¶ 39; Silitsky Decl. ¶ 7, so the only question is whether the HDI Policy is "underlying insurance."

The Umbrella Policy defines "underlying insurance" as "the coverages(s) afforded under insurance policies designated in the Declarations Page" and "any other insurance available to the insured, except such insurance as may be purchased to apply specifically in excess of this policy." TK's Resp. to DSOF ¶ 37; Umbrella Policy at 40. Only the CGL Policy is listed as an underlying insurance policy in the Declarations Page; the HDI Policy is not included. Def.'s Resp. to TK's SOF ¶ 25; Umbrella Policy at 18. But the HDI Policy is "other insurance available to" TK Elevator, which meets the definition of "underlying insurance." So under the plain terms of the Umbrella Policy, the HDI Policy is "underlying insurance."

Still, TK Elevator argues that the HDI Policy was "specifically purchased to apply in excess of" the Umbrella Policy, and thus falls under the exception in the definition of "underlying insurance." TK's Br. at 15–16. Again, the Umbrella Policy defines "underlying insurance" as "any other insurance available to the insured, except such insurance as may be *purchased to apply specifically in excess of this policy*."

15

TK's Resp. to DSOF ¶ 37; Umbrella Policy at 40 (emphasis added). Similarly, the Umbrella Policy says that it "is excess over any other insurance, whether primary, excess, contingent, or on any other basis, except such insurance as is *specifically purchased to apply in excess of this policy*'s Limit of Insurance." Def.'s Resp. to TK's SOF ¶ 57; Umbrella Policy at 34 (emphasis added).

TK Elevator points to two provisions in the HDI Policy that dictate when it is deemed to be excess over other insurance. TK's Br. at 15–17. First, the HDI Policy is excess over "[a]ny other primary insurance available to [TK Elevator] covering liability for damages arising out of the premises or operations, or the products and completed operations, for which [TK Elevator] ha[s] been added as an additional insured." TK's Br. at 15–16; TK's Resp. to DSOF ¶ 40; HDI Second Layer Policy at 42. Second, it is excess over "any other available and collectible insurance that is required by contract to be maintained for the benefit of [TK Elevator] by a third party." TK's Br. at 15–16; TK's Resp. to DSOF ¶ 40; HDI Second Layer Policy at 66. TK Elevator contends that the first provision applies, and thus the HDI Policy is excess over the Umbrella Policy, because the Umbrella Policy "cover[s] liability for damages arising out of" the Waterford elevator. TK's Br. at 15–17; TK's Resp. to DSOF ¶ 40; HDI Second Layer Policy at 42. And TK Elevator argues that the second provision applies because Affordable Community Housing was required to maintain insurance for TK Elevator under the Elevator Maintenance Agreement, and thus the Umbrella Policy is "insurance that is required by contract to be maintained for the benefit of [TK Elevator] by

a third party." TK's Br. at 15–17; TK's Resp. to DSOF ¶ 40; HDI Second Layer Policy at 66.

But neither provision refers to the Umbrella Policy. The Umbrella Policy requires that other insurance be "purchased to apply *specifically* in excess of *this policy*." TK's Resp. to DSOF ¶ 37; Umbrella Policy at 40 (emphasis added). The "general language" in the HDI Policy's provisions "cannot be interpreted to mean that it was specifically written to be excess over" the Umbrella Policy. *Am. Country Ins. Co. v. Hanover Ins. Co.*, 689 N.E.2d 186, 190–91 (Ill. App. Ct. 1997). "If that had been the intention, the … umbrella policy would have been specifically named in the" HDI Policy's provisions. *Id.* at 191. In other words, because the generic provisions of the HDI Policy do not reference the Umbrella Policy, they do not establish that TK Elevator intended to purchase the HDI Policy to "apply specifically in excess of" the Umbrella Policy. Umbrella Policy at 40.

TK Elevator alternatively argues that, because the Elevator Maintenance Agreement required Affordable Community Housing to purchase *primary* insurance, the Umbrella Policy must be primary and the HDI Policy must be excess over it. TK's Br. at 17; Elevator Maintenance Agreement at 4–5. This argument might be persuasive if the terms of the Umbrella Policy conditioned whether it was primary or excess on a written agreement or contract. *See, e.g.*, *River Vill. I, LLC v. Cent. Ins. Cos.*, 919 N.E.2d 426, 435 (Ill. App. Ct. 2009) (holding that an insurance policy was excess, not primary, because the policy stated that it was excess "unless a contract specifically requires that this insurance be … primary" and the parties' contract did not so

17

require); *W. Bend Mut. Ins. Co. v. DJW-Ridgeway Bldg. Consultants, Inc.*, 40 N.E.3d 194, 205–06 (Ill. App. Ct. 2015) (holding that an insurance policy was primary because the policy stated that it was primary if a written contract required it and the contract did so). But the Umbrella Policy does not include any such language. Instead, whether another insurance policy is excess over the Umbrella Policy depends only on the insured's intent when purchasing the other policy. And the Elevator Maintenance Agreement offers no evidence of TK Elevator's intent when it purchased the HDI Policy.

What's more, the coverage language throughout the HDI Policy supports Church Mutual's view that it was *not* purchased specifically to apply in excess of the Umbrella Policy. The HDI Policy prescribes that it is—as a default—"primary" insurance. *See* TK's Resp. to DSOF ¶ 40; HDI Second Layer Policy at 42 ("This insurance is primary except when Paragraph b. below applies."). Indeed, its coverage does not depend on the coverage—or lack thereof—of any other insurance. *See* TK's Resp. to DSOF ¶ 40; HDI Second Layer Policy at 31. The HDI Policy is only excess in a few, specific scenarios. *See* TK's Resp. to DSOF ¶ 40; HDI Second Layer Policy at 42, 66 (listing a few exceptions in which the HDI Policy is excess). And the policy does not offer a schedule designating any insurance—the Umbrella Policy or any other policy—as underlying insurance. *See generally* HDI Second Layer Policy. Taken together, this language shows that TK Elevator intended to purchase *primary*, not excess, coverage from HDI. And it further supports the Court's conclusion that the HDI Policy was not specifically purchased to apply in excess of the Umbrella Policy. *See*

18

*Westfield*, 796 F.3d at 778 (describing how, under Illinois law, the Court "must construe the polic[ies] as a whole" and "tak[e] into account the type of insurance for which the parties have contracted" when interpreting insurance policies (cleaned up)).

In sum, because TK Elevator points to no language in the HDI Policy that shows it was "purchased to apply specifically in excess of" the Umbrella Policy, the HDI Policy is "underlying insurance" and must be exhausted before the Umbrella Policy requires Church Mutual to defend TK Elevator. So Church Mutual does not have a duty to defend TK Elevator in the underlying suits.

### 2. Targeted Tender

TK Elevator argues in the alternative that even if the HDI Policy is not excess over the Umbrella Policy, the two policies are concurrent and thus TK Elevator could select Church Mutual to defend it in the underlying suits. TK's Br. at 17–18. Under Illinois law, "the 'targeted' or 'selective' tender doctrine allows an insured covered by multiple insurance policies to select or target which insurer will defend and indemnify it with regard to a specific claim." *Kajima Constr. Servs., Inc. v. St. Paul Fire & Marine Ins. Co.*, 879 N.E.2d 305, 309 (Ill. 2007). After the underlying suits were filed, TK Elevator sent a letter to Triad making "a tender of the defense, request for insurance coverage, and indemnification for both the Carroll and Zenith matters" from Church Mutual, rather than HDI. Def.'s Resp. to TK's SOF ¶ 42; Feb. 17, 2021, TK Elevator Letter at 5.

Church Mutual disputes whether TK Elevator made a proper tender. Church Mutual notes that TK Elevator's letter did not name Church Mutual and that TK

Elevator's request for a defense and indemnification primarily relied on contractual obligations under the Elevator Maintenance Agreement, to which Triad was not a party. Def.'s Br. at 24. But the Court need not resolve this issue, because even assuming that TK Elevator made an effective tender, the targeted-tender doctrine does not help it here.

The targeted-tender doctrine originated in cases where the insured was covered by two concurrent *primary* policies, not one primary and one excess policy. *See Kajima Constr. Servs. Inc.*, 879 N.E.2d at 314. And the Illinois Supreme Court has "refused to extend the targeted tender doctrine to allow an insured to request the application of an excess policy before he exhausts all his primary coverage." *River Vill.*, 919 N.E.2d at 433. Indeed, the purpose of excess insurance is that it only provides a defense when the underlying insurance has been exhausted. *Great Am. Ins. Co.*, 104 F.4th at 1015. Because the Court has determined that the Umbrella Policy is excess over the HDI Policy, and the HDI Policy must be exhausted first, TK Elevator cannot use a targeted tender to require Church Mutual to defend it in the underlying suits.

Because the Court concludes that Church Mutual does not have a duty to defend TK Elevator in the underlying suits, TK Elevator's motion, R. 85, is denied, and Church Mutual's cross-motion, R. 92, is granted.

### B. Church Mutual's Duty to Defend Triad

Church Mutual also moves for summary judgment against Triad, arguing that the insurer does not have a duty to defend Triad against TK Elevator's third-party

claims in the underlying suits. Def.'s Mot. at 2. Both the CGL Policy and Umbrella Policy contain the Employee Exclusion for bodily injuries suffered by employees. Triad's Resp. to DSOF ¶¶ 36–37; CGL Policy at 103; Umbrella Policy at 58. Church Mutual argues that the Employee Exclusion applies to the third-party claims against Triad, absolving Church Mutual of its duty to defend, because the claims are based on injuries Carroll received in the course of her employment with Triad. Def.'s Mot. at 2. Triad does not disagree that the Employee Exclusion applies. *See generally* Triad's Resp. Br. But Triad opposes the motion for summary judgment because it contends that there are genuine disputes of fact material to whether estoppel or waiver prevent Church from withdrawing its defense. *Id.* at 5.

Estoppel and waiver are distinct affirmative defenses under Illinois insurance law. *Lumbermen's Mut. Cas. Co. v. Sykes*, 890 N.E.2d 1086, 1097 (Ill. App. Ct. 2008). An insured must prove either defense "by clear, precise and unequivocal evidence." *Essex Ins. Co. v. Stage 2, Inc.*, 14 F.3d 1178, 1181 (7th Cir. 1994). And proof of either estoppel or waiver is sufficient to prevent an insurer from withdrawing its defense of the insured. *Lumbermen's*, 890 N.E.2d at 1097. So if there are genuine disputes of fact material to either estoppel or waiver, the Court cannot grant summary judgment to Church Mutual. *See W. Cas. & Sur. Co. v. Brochu*, 475 N.E.2d 872, 879 (Ill. 1985). Instead, the Court must reserve the issue for a jury. *See Lumbermen's*, 890 N.E.2d at 1098; *see also Richelieu Foods, Inc. v. New Horizon Warehouse Distrib. Ctr., Inc.*, 67 F. Supp. 3d 903, 913 (N.D. Ill. 2014). The Court addresses each defense in turn.

21

### 1. Equitable Estoppel

"Illinois recognizes two distinct theories of estoppel": contractual estoppel and equitable estoppel. *Ill. Sch. Dist. Agency v. Pac. Ins. Co., Ltd.*, 471 F.3d 714, 720 (7th Cir. 2006). Here, Triad argues only that equitable estoppel applies. Triad's Resp. Br. at 14. Equitable estoppel "is based upon an insurer's conduct or representations which mislead an insured to his detriment." *Stage 2*, 14 F.3d at 1182. Equitable estoppel thus "requires the insured to establish the following: (1) that he was misled by the acts or statements of the insurer or its agent; (2) reliance by the insured on those representations; (3) that such reliance was reasonable; and (4) detriment or prejudice suffered by the insured based on the reliance." *Lumbermen's*, 890 N.E.2d at 1101 (cleaned up). For instance, "[i]f an insurer undertakes its insured's defense without reserving its rights to contest coverage and that undertaking results in prejudice to the insured, the insurer may be estopped from later denying coverage." *Stage 2*, 14 F.3d at 1182. "Whether the insured has been prejudiced is a question of fact," which is the insured's burden to prove. *Brochu*, 475 N.E.2d at 879.

At this stage in the underlying suits, the only outstanding third-party claims against Triad are for contribution. Triad's Resp. to DSOF ¶¶ 31–33; Underlying-Suit Opinion at 2, 12–14. Triad argues that equitable estoppel applies because Church Mutual defended Triad against the contribution claims without reservation, which Triad reasonably relied on to its detriment. Triad's Resp. Br. at 15. Church Mutual responds that Triad has failed to prove two elements of equitable estoppel: that Church Mutual did not reserve its rights as to its duty to defend against the

22

contribution claims, and that Triad was prejudiced by Church Mutual's defense in the underlying suits. R. 104, Def.'s Reply Br. at 18–21. As explained next, the Court agrees with Triad that there are genuine disputes of fact material to these elements of equitable estoppel, and thus summary judgment is inappropriate.

### a. Reservation of Rights

First, there is a genuine dispute on whether Church Mutual agreed to defend Triad against the contribution claims without reservation, thus misleading Triad to believe that Church Mutual would not later withdraw its defense. "When an insurer steps in to fulfill its obligation to defend by assuming the defense against … a complaint, it must do so under a reservation of rights—or else risk later being estopped from raising policy defenses." *Essex Ins. Co. v. Blue Moon Lofts Condo. Ass'n*, 927 F.3d 1007, 1012 (7th Cir. 2019). Triad points to Church Mutual's June 2021 coverage position letter, which "acknowledge[d] its duties to defend and indemnify as to the contribution claim." Def.'s Resp. to Triad's SOF ¶ 8; June 18, 2021, Church Mutual Letter at 2. The letter expressly reserved Church Mutual's "rights as to any duty to indemnify [Triad] for the" other third-party claims, but expressed no reservations on the contribution claims. Def.'s Resp. to Triad's SOF ¶ 8; June 18, 2021, Church Mutual Letter at 2. And although the letter acknowledged that the underlying suits were based on injuries to Carroll arising from her employment at Triad, it did not reference the Employee Exclusion. Def.'s Resp. to Triad's SOF ¶ 7; June 18, 2021, Church Mutual Letter at 3, 16–17. Viewed in Triad's favor, the letter suggests that Church

23

Mutual agreed to defend Triad against the contribution claims without reservation and would not later disclaim its duty to defend based on the Employee Exclusion.

Church Mutual argues that it included a general reservation of rights in the June 2021 letter, which includes the contribution claims. Def.'s Reply Br. at 19. The letter does include the following language: "We hereby fully and completely reserve our rights with respect to [the] Lawsuit under the Policies and at law and will continue to investigate the Lawsuit subject to a full and complete reservation o[f] rights. … While we have sought to identify and address above all relevant insurance coverage considerations, this letter is not intended and should not be construed as a waiver or estoppel of any right or basis which we may have to disclaim coverage … and we reserve all rights in this regard." Def.'s Resp. to Triad's SOF ¶ 8; June 18, 2021, Church Mutual Letter at 2, 17. A reasonable juror might believe that the general reservation of rights applies to the contribution claims. But a reasonable juror might instead give weight to the fact that the letter specifically reserved Church Mutual's rights as to the other third-party claims against Triad, but *not* the contribution claims, and did not mention the Employee Exclusion at all. Generally, "bare notice of a reservation of rights is insufficient"—an insurer must "adequately inform the insured of the rights which the insurer intends to reserve, for it is only when the insured is adequately informed of the potential policy defense that he can intelligently choose between retaining his own counsel or accepting the tender of defense counsel from the insurer." *Royal Ins. Co. v. Process Design Assocs., Inc.*, 582 N.E.2d 1234, 1239 (Ill. App. Ct. 1991) (cleaned up). Thus, at most, Church Mutual's argument

24

reveals that there is a genuine dispute of fact for a jury to resolve: whether Church Mutual agreed to defend Triad against the contribution claims without reservation in the June 2021 letter.

Church Mutual also alleges that it sent a follow-up letter to Triad in August 2021, in which it "reserve[d] its right to deny coverage under the employee exclusion in the Primary Policy … and Umbrella Policy." Def.'s Resp. to Triad's SOF ¶¶ 11, 16; Aug. 2021 Church Mutual Letter at 2. If Church Mutual did send this letter, then it might serve as an adequate reservation of rights and defeat the equitable estoppel defense. *See Lumbermen's*, 890 N.E.2d at 1104. But Triad denies ever receiving the August 2021 letter. Def.'s Resp. to Triad's SOF ¶ 17; Vail Decl. ¶ 7. And Triad notes several details about the letter that suggest it was a draft that was never sent. Triad's Resp. Br. at 19. For example, the letter has no precise send date—its date is listed as "August __, 2021"—letterhead, or signature. Def.'s Resp. to Triad's SOF ¶ 12; Aug. 2021 Church Mutual Letter at 2, 13. What's more, when Triad later asked whether Church Mutual ever responded to some of Triad's earlier correspondence about Church Mutual's coverage position, the insurer did not mention the August 2021 letter. Def.'s Resp. to Triad's SOF ¶¶ 22–23; R. 102-9, Triad's Exh. I, Apr. 10, 2023, Triad Letter at 2; May 8, 2023, Church Mutual Email at 1–2. So whether Church Mutual ever sent the August 2021 letter is genuinely disputed.

Instead, viewing the evidence in the light most favorable to Triad, as the Court must, Church Mutual did not mention the Employee Exclusion or otherwise reserve its rights as to the contribution claims until its May 2023 email to Triad. Def.'s Resp.

25

to Triad's SOF ¶ 23; May 8, 2023, Church Mutual Email at 1–2. At that point, Church Mutual had defended Triad in the underlying suits without reservation for over two years. Def.'s Resp. to Triad's SOF ¶¶ 4–5; R. 102-3, Triad's Exh. C, LGLJ Attorney Appearance at 2–3 (noting attorney appearances in the underlying suits on behalf of Triad in March 2021). Triad has thus raised a dispute of fact that enables it to survive summary judgment. *See Lumbermen's*, 890 N.E.2d at 1102.

Triad also correctly notes that "Illinois courts have found estoppel even when there has been a reservation of rights." *Willis Corroon Corp. v. Home Ins. Co.*, 203 F.3d 449, 452 (7th Cir. 2000); Triad's Resp. Br. at 20. In Illinois, "a reservation of rights [cannot] give an insurer license to prejudice its insured however it wanted." *Willis Corroon Corp.*, 203 F.3d at 452. So even if Church Mutual fully reserved its rights as to the contribution claims from the beginning of the underlying suits, Triad could still defeat the motion for summary judgment by showing that there is a genuine dispute of fact on whether it suffered prejudice from Church Mutual's defense. *See id.* at 453 (finding estoppel even where the insurer took on the defense under a reservation of rights). The Court must turn to the second disputed issue of fact material to equitable estoppel: prejudice.

### b. Prejudice

The Court agrees with Triad that there are also genuine disputes of fact on whether Triad was prejudiced by Church Mutual's defense in the underlying suits. In Illinois, "the [prejudice] inquiry is focused on only one question: whether [Church Mutual], as part of defending [Triad] against [TK Elevator's] claim, took control of

26

[the] litigation defense away from" Triad. *Blue Moon*, 927 F.3d at 1013. "Prejudice will not be conclusively presumed from the insurer's mere entry of appearance and assumption of the defense." *Id.* (cleaned up). "If, however, by the insurer's assumption of the defense the insured has been induced to surrender his right to control his own defense, he has suffered a prejudice which will support a finding that the insurer is estopped to deny" a defense. *Id.* (cleaned up).

Here, the evidence shows that Church Mutual has controlled Triad's defense in the underlying suits for over four years. Def.'s Resp. to Triad's SOF ¶¶ 4–5; Vail Decl. ¶ 10. In March 2021, Church Mutual selected Langhenry, Gillen, Lundquist & Johnson, LLC to defend Triad—and later Affordable Community Housing—against TK Elevator's third-party claims. Def.'s Resp. to Triad's SOF ¶¶ 4–5, 19; Vail Decl. ¶¶ 10–11; LGLJ Attorney Appearance at 2–3; R. 102-6, Triad's Exh. F, Second LGLJ Attorney Appearance at 2. In March 2025, Church Mutual appointed a different firm—Vedder Price—to represent Triad when it became clear that Triad and Affordable Community Housing had conflicting interests. Def.'s Resp. to Triad's SOF ¶ 31; Vail Decl. ¶ 12; R. 102-13, Triad's Exh. M, Vedder Price Attorney Appearance at 2. It is thus undisputed that Triad's only counsel in the underlying suits has been provided by Church Mutual, and that counsel has controlled all litigation decisions. Illinois courts have found prejudice in this exact situation. *See Nat'l Ben Franklin Ins. Co. v. Davidovitch*, 462 N.E.2d 696, 700–01 (Ill. App. Ct. 1984) (finding estoppel where insurer defended insured for over two years and insured was not represented in the

litigation by their own counsel). At minimum, Triad raises a genuine dispute of fact on prejudice based on Church Mutual's control over its defense.

Triad also alleges several specific ways in which its appointed counsel's representation has been inadequate, resulting in prejudice. Triad's Resp. Br. at 17–18. For instance, Triad alleges that not until after summary judgment briefing on the underlying third-party claims did counsel realize that Affordable Community Housing, not Triad, was party to the Elevator Maintenance Agreement. Def.'s Resp. to Triad's SOF ¶¶ 21, 25; R. 102-8, Triad's Exh. H, Triad Answer in Underlying Suits ¶ 14; R. 102-11, Triad's Exh. K, Triad Summary Judgment Resp. Br. in Underlying Suits at 2. As a result, summary judgment was entered against Triad in the underlying suits on a breach-of-contract claim based on the Elevator Maintenance Agreement. Triad's Resp. to DSOF ¶ 33; Underlying-Suit Opinion at 36. Although the assigned judge later entered a consent judgment that replaced Affordable Community Housing as the defendant in the breach-of-contract claim, Triad's Resp. to DSOF ¶ 34; R. 95-3, Def.'s Exh. C, Consent Judgment at 2, Triad argues that it was nonetheless prejudiced by counsel's error. Similarly, Triad asserts that it was prejudiced when counsel was unprepared at several settlement conferences held in the underlying suits. R. 102, Triad's Additional SOF ¶ 27; R. 102-12, Triad's Exh. L, Dec. 11, 2023, Triad Letter at 2. These allegations further raise a plausible inference that Triad suffered prejudice from the defense funded by Church Mutual.

Church Mutual points out that Triad offers no evidence to definitively prove that, if Triad had instead hired independent counsel, then that counsel would have

better handled the breach-of-contract claim or settlement conferences. Def.'s Reply Br. at 21. True. But Triad need not make such a showing to prove equitable estoppel. *See Blue Moon*, 927 F.3d at 1013. An insured faces inherent difficulties in proving that it would have had better legal outcomes without the insurer's defense. *See Home Ins. Co. v. Three I Truck Line, Inc.*, 95 F. Supp. 2d 901, 906 (N.D. Ill. 2000). That is why the prejudice inquiry focuses on the insured's *control* over the defense, not the ultimate outcome. *Id.* ("[T]he factual inquiry becomes not whether [the insured] could somehow manage to *prove* that [the insurer's] defense … caused a less favorable outcome for [the insured]—after all, how is it possible for [the insured] to make that demonstration (or for this Court to make that determination) after the fact … ?—but rather whether [the insurer] usurped control of the defense from [the insured]." (emphasis in original)). So even if Triad has insufficient evidence to prove that Church Mutual's defense caused a less favorable outcome in the underlying suits, it has still raised a genuine issue of fact as to prejudice based on Church Mutual's control of the defense.

Because Triad raises several genuine disputes of fact material to the elements of equitable estoppel that Church Mutual disputes, summary judgment against Triad is rejected.

## 2. Waiver

Although the equitable-estoppel decision is itself sufficient to deny Church Mutual's motion for partial summary judgment, the Court also briefly addresses waiver for the sake of thoroughness. "Waiver consists of the voluntary and intentional

relinquishment of a known and existing right" by an insurer. *Stage 2*, 14 F.3d at 1181. Waiver "may be either express or implied, arising from acts, words, conduct, or knowledge of the insurer." *Id.* To establish waiver, an insurer must have had actual or constructive knowledge of the relevant facts in the underlying case. *Lumbermen's*, 890 N.E.2d at 1100. "Waiver is also essentially unilateral, focusing only upon the acts and conduct of the insurer, and requiring no act of the insured to complete it." *Stage 2*, 14 F.3d at 1181. Thus, unlike equitable estoppel, "[p]rejudicial reliance by the insured is not required." *Id.*

For many of the same reasons discussed in the Court's estoppel analysis, Triad raises a genuine dispute of fact on waiver. Church Mutual does not contend that it was unaware of the facts necessary for it to conclude that the Employee Exclusion applied to TK Elevator's third-party claims against Triad. *See generally* Def.'s Reply Br. And as discussed previously, there is a genuine dispute of fact on whether Church Mutual agreed to defend Triad against the contribution claims without reservation. If Church Mutual did, in fact, defend Triad for several years without a reservation of rights as to the contribution claims, then that would likely constitute waiver. *See Gibraltar Ins. Co. v. Varkalis*, 263 N.E.2d 823, 826–27 (Ill. 1970) (holding that insurer waived policy defense by defending insured without reservation for over a year). Thus, because Triad also raises genuine disputes of fact relevant to waiver, the Court cannot grant Church Mutual's motion for partial summary judgment against Triad.

30

## IV. Conclusion

TK Elevator's motion for partial summary judgment, R. 85, is denied and Church Mutual's cross-motion for partial summary judgment against TK Elevator, R. 92, is granted. The Court declares that Church Mutual has no duty to defend TK Elevator, because Church Mutual's insurance policy requires TK Elevator to first exhaust underlying insurance for its defense, and TK Elevator has not done so. But Church Mutual's motion for partial summary judgment against Triad, R. 92, is denied, because there are genuine disputes of fact on whether equitable estoppel or waiver prevent Church Mutual from withdrawing its defense of Triad in the underlying suits.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: November 14, 2025

31